## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AIRELL MAZER, et al.,<br>            Plaintiffs, | CIVIL No. 1:19-cv-01838 |
| v. | (JONES, C.J.)<br>(SAPORITO M.J.) |
| FREDERICK MUTUAL<br>INSURANCE COMPANY,<br>            Defendant. | |

FILED
WILKES BARRE
PER
MAR 05 2021
DEPUTY CLERK

### MEMORANDUM

## I.   *Statement of Facts*

This matter arises out of a fire at the property of the plaintiffs, Airell Mazer and Joseph Mazer, on November 2, 2018, which allegedly resulted in a total loss of their real estate in Harrisburg, Pennsylvania. The plaintiffs filed their complaint against the defendant, Frederick Mutual Insurance Company, on October 22, 2019, alleging breach of contract and bad faith.  (Doc. 1.)  The plaintiffs sought to compel production of the defendant's unredacted claim file and for an *in-camera* review.  (Doc. 65.)  The plaintiffs take issue with the sufficiency of the defendant's document production concerning its claim file. In connection therewith, the defendant prepared a privilege log describing the redacted documents.  (Doc. 67-1, at 86-89.)  The privilege log contains four general

categories of information: (1) communications regarding expenses incurred and paid by the defendant; (2) communications with counsel; (3) mental impressions; and (4) other financial information.

On February 3, 3021, we ordered an *in-camera* review of the documents described in the defendant's privilege log.  (Doc. 78.)  On February 16, 2021, the defendant timely produced the redacted and unredacted copies as directed for our *in-camera* review.

## II.   *Legal Standard*

The federal courts have broad discretion to manage discovery, *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995), and the federal rules have long permitted broad and liberal discovery. *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). Pursuant to Rule 26(b)(1), parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Further, the federal rules' relevancy requirement is to be construed broadly, and material is relevant if it bears on, or reasonably could bear

on, an issue that is or maybe involved in the litigation. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978).

Rule 26 establishes a liberal discovery policy. Discovery is generally permitted of any items that are relevant or may lead to the discovery of relevant information. Moreover, discovery need not be confined to items of admissible evidence but may encompass that which appears reasonably calculated to lead to the discovery of admissible evidence. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226 (M.D. Pa. 2014). When the Court is presented with a motion to compel discovery,

> [t]he burden is on the objecting party to demonstrate in specific terms why a discovery request is improper. The party objecting to discovery must show that the requested materials do not fall within the broad scope of relevance or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Id.* at 227 (citations, internal quotation marks, and alterations omitted).

## III.  Discussion

In the defendant's privilege log, the defendant contends that the information requested is protected by the attorney-client or work product privileges.  Further, the defendant contends that the material contains

mental impressions of the defendant's representatives or counsel, protected reserve information, and proprietary insurance premium/financial information.  In its brief in opposition to the plaintiffs' motion, the defendant also argues that the requested material is not relevant to the resolution of any issue in this matter. (Doc. 67, at 21).

### a. Communications regarding expenses incurred and paid for by the defendant.

All the entries in this category (FMIC000001-000011, FMIC000392) relate to the approval of legal fees and expenses. There are no entries referencing attorney-client communications which are privileged.  They are administrative in that they reference authorizations of payment and the amounts approved for payment.  Some of the entries predate the filing of the complaint and some come after the filing of the complaint.  None of the entries reveal the nature of the work performed.  In general, the mere facts of legal consultation or employment, client identities, *attorney's fees* and the scope and nature of employment are not privileged.  *Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200, 218 (M.D. Pa. 2003) (citing *Humphreys v. Donovan,* 755 F.2d 1211, 1219 (6th Cir. 1985) (emphasis added).  Attorney billing records may be privileged if they reveal the nature of the services rendered.  *Montgomery Cty. v.*

*MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999). Based upon our *in-camera* review, we find that none of the entries reveal the nature of the services rendered, and they fall within the liberal discovery policy encompassed by Fed. R. Civ. P. 26. We will direct that the information redacted from documents FMIC 000001-000011 and FMIC000392 be disclosed to the plaintiffs without redactions.

### b. *Communications with counsel.*

The defendant objects to the next group of documents consisting of communications to and from the defendant's counsel on the basis that they are protected by attorney-client privilege. Those documents are marked FMIC000013, 000294, 000324, 000325, 000328, 000342, 000465, 000468, and 000481.

This is a diversity case. Therefore, Pennsylvania state law governs whether attorney-client privilege applies to the documents at issue. *See* Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988). *See generally* 42 Pa. Cons. Stat. Ann. § 5928 ("In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the

client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.").

"Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991); *see also Harrisburg Auth. v. CIT Capital USA, Inc.*, 716 F. Supp. 2d 380, 387 (M.D. Pa. 2010) (noting that, under Pennsylvania law, the attorney-client privilege is generally disfavored and should be narrowly construed). For the attorney-client privilege to attach to a communication, "it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting *Restatement (Third) of the Law Governing Lawyers* § 68 (2000) [hereinafter, *"Restatement (3d) Lawyers"*]). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Id.* at 359 (citing *Restatement (3d) Lawyers* § 70). "A communication is only privileged if it is made 'in confidence.'" *Id.* at 361 (citing *Restatement (3d) Lawyers* § 68). "[I]f persons other than the client, its attorney, or their

agents are present, the communication is not made in confidence, and the privilege does not attach." *Id.* at 361.

"As a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services." *Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984). "These exceptions are consistent with the goal underlying the privilege because [this] type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse*, 951 F.2d at 1424.

The documents at issue here consist mostly of email messages and attachments. As a general rule, "each version of an email string (i.e. a forward or reply of a previous email message) must be considered as a separate, unique document." *Rhoads Indus., Inc. v. Bldg. Materials Corp. of America*, 254 F.R.D. 238, 240 (E.D. Pa. 2008); *accord United States v. Davita, Inc.*, 301 F.R.D. 676, 684–85 (N.D. Ga. 2014); *Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 336–37 (M.D. Pa. 2013).

> For example, an email string consisting of four email messages would have four distinct versions: (1) the most recent version consisting of Email 4 (most recent), Email 3, Email 2, and Email 1

(original email), (2) a prior version consisting of Email 3, Email 2, and Email 1, (3) a prior version consisting of Email 2 and Email 1, and (4) the original Email 1. Additionally[,] there could be other email strings consisting of some or all of Emails 1–4.

*Rhoads Indus.*, 254 F.R.D. at 240 n.4. Thus, "each message of the string which is privileged must be separately logged in order to claim privilege in that particular document." *Id.* at 240–41; *see also Davita*, 301 F.R.D. at 685 ("[T]he Court simply requires that Defendants ensure that each withheld email within a string be logged in some fashion *at least once*.").

FMIC000013 relates to two log entries dated April 24, 2019, at 8:44:17 AM and 9:07:19 AM by Brian Culp noting his calls to counsel. Neither log entry references any privileged communication.

FMIC000294 consists of two emails both dated April 24, 2019, at 7:59 AM and at 10:18:42 AM. The email at 7:59 AM is from Robert Pelletier to Brian Culp and references a conference which occurred on April 18, 2019, and reserve information, which we will address below. This email also directs Mr. Culp to check with counsel. The email at 10:18:42 AM is simply a return email from Mr. Culp to Mr. Pelletier advising that he spoke with counsel and provided the documents to him.

Neither email contain attorney-client communications. Therefore, we will direct that they be unredacted and provided to plaintiffs.

The other emails set forth in FMIC 000324, 000325, 000342, 000465, 000468, and 000481 do not contain attorney-client privileged communications. Rather, they contain the name of counsel as either the sender or a recipient of an email, or they reference that counsel was contacted. None of these documents contain privileged communications. We will direct that the documents be unredacted and disclosed to the plaintiffs.

FMIC000328 is page 2 of a report from Gregg Holst of Crawford & Company which references the placing of a call to counsel and a proposed course of action to follow-up with him. The document does not contain any attorney-client privileged communications. We will direct that the document be unredacted and disclosed to the plaintiffs.

### c. *Mental impressions.*

The defendant redacted portions of the claims file which include the claims representatives' impressions, conclusions, and opinions. Mental impressions and opinions of a party and its agents are not generally protected by the work product doctrine unless they are

prepared in anticipation of litigation. *See Safeguard Lighting Sys., Inc. v. N. Am. Specialty Ins. Co.*, Civ. No. 03-cv-4145, 2004 WL 3037947, *2 (E.D.Pa. Dec. 30, 2004) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). To that end, "work product prepared in the ordinary course of business is not immune from discovery." *Id.* (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000)). Thus, as stated by this court in *Keefer v. Erie Insurance Exchange*, Civ. No. 13-cv-1938, 2014 WL 901123 at *4 (M.D. Pa. Mar. 7, 2014), the gravamen of a claim of work product protection necessarily requires an assessment of when litigation was anticipated, which is a determination not subject to a bright-line rule. Our court has long adopted a case-by-case approach. *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (M.D. Pa. 1985). As recognized by the Third Circuit, "[p]rudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (citing *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)). Thus, whether litigation was reasonably anticipated is a fact-dependent inquiry.

Although the court lacks the necessary evidence to determine precisely when the defendant's claims representatives reasonably anticipated litigation, the court has reviewed the entire unredacted version of the documents with this standard in mind, and concludes that certain portions of the claims record were prepared in anticipation of litigation and should be protected.

FMIC000126 is an email from Jill Showalter to representatives of the defendant.  The redacted sentence in the first paragraph of the email contains Ms. Showalter's mental impressions, prepared in anticipation of litigation, and shall remain redacted.

FMIC000284-000287 are mental impressions of the defendant's representative, prepared in anticipation of litigation, and shared with other representatives of the defendant.  Those documents shall remain redacted.

FMIC000298 and 000299 are two copies of the same email dated April 29, 2019, from Richard Shay, the defendant's representative, to Gregg S. Holst, a property adjuster for Crawford & Company.  The defendant claims the email contains protected mental-impression work product of the defendant's representatives or counsel.  Our review of the

document reveals the email does not contain any protected work product. We will direct that the documents be unredacted and disclosed to the plaintiffs.

FMIC000330 and 000331 appears to be the last two pages of a longer internal report by Brian Culp documenting the underlying property claim. The full report appears to have been produced to the plaintiffs with the last several paragraphs on these final two pages redated. The defendant claims the redacted material contains the mental impression of its representative, Mr. Culp. But upon *in-camera* review, it is apparent that the redacted material does not reflect Culp's mental impressions prepared in anticipation of this litigation. Rather, the redacted material concerns his analysis and recommendations with respect to the insurer's general business practices—the investigation and evaluation of future, *notional* property claims involving suspicious circumstances. We will direct that these documents be unredacted and disclosed to the plaintiffs.

FMIC000334 is an email from Jill Showalter to Robert Pelletier and Nancy Newmister dated May 23, 2019. The redacted portion of the email

contains Ms. Showalter's mental impressions regarding the claim prepared in anticipation of this litigation, and it shall remain redacted.

FMIC000539 is the Homeowner Application.  The redactions are identified in the privilege log as "notations on Homeowner Application," and the defendant contends it is not subject to disclosure because it contains the mental impressions of the defendant's representatives.  We find it reasonably certain to conclude that the Homeowner Application and the notations made by the defendant's representatives were not made in anticipation of litigation.  Thus, we will direct that the document be unredacted and disclosed to the plaintiffs.

### d. Other financial information.

The defendant contends that the following documents are protected from disclosure because they represent proprietary financial information or protected reserve information: FMIC00001-00003, 00007, 00009-00016, 00019, 00022, 000294, 000392, 000485, 000539, and 000562.

The documents numbered FMIC00001-00003, 00007, 00009-00011 do not contain any proprietary information or protected reserve information.  Those documents shall be unredacted and disclosed to the

plaintiffs. The documents numbered FMIC00012-00016, 00022, 000294, and 000561 contain references to reserve information.

An insurance reserve is money set aside "to satisfy obligations that may arise under a claim." *Peco Energy Co. v. Ins. Co. of N. America*, 852 A.2d 1230, 1232 n.3 (Pa. Super. Ct. 2004), and Pennsylvania requires insurance companies to set reserves aside when they are placed on notice of possible losses arising under their policies. *Keefer* 2014 WL 901123 at 3. This Court has observed that courts in this circuit are split on the question of whether reserves are discoverable in bad faith cases. *See Barnard v. Liberty Mut. Ins. Corp.*, No. 3:18-CV-01218, 2019 WL 461510, at *5 (M.D. Pa. Feb. 6, 2019) (citing *Consugar v. Nationwide Ins. Co.*, No. 3:10-CV-2084, 2011 WL 2360208, at *5 (M.D. Pa. June 9, 2011). *Barnard* points out that the "[p]revailing view indicates that reserves may be discoverable in a bad faith action when the claim relates to an insurer's failure to settle or where there is a discrepancy regarding the value of the claim." *Id.* But, "[w]hen the bad faith claim is based on a denial of coverage and 'does not involve the value of the claim or [the plaintiff's] estimation of liability ... the reserve information requested is neither

relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* at \*6.

Here, the complaint (Doc. 1) and the answer (Doc. 17) reflect that the parties have a difference of opinion regarding the value of the claim, and thus, the requested information on reserves should be disclosed to the plaintiffs.  Given the prevailing view and that the dispute is one of value, we will direct that the documents numbered FMIC00012-00016, 00022, 000294, and 000561 shall be unredacted and disclosed to the plaintiffs.

Finally, the defendant contends that FMIC000485 should not be disclosed without the redacted section.  This page and redaction relate to the agent who sold the policy to the plaintiffs.  While we are not making a ruling on the admissibility of this document at trial, it falls within the liberal discovery policy encompassed by Rule 26.  Therefore, we will direct that it be unredacted and disclosed to the plaintiffs.

An appropriate order follows.

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: March 5, 2021